UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| DANIEL C. PORTEE, | ) |
|     Plaintiff, | ) Civil Action No. 6:16-281-GFVT |
| V. | ) |
| | ) **MEMORANDUM OPINION** |
| J. C. HOLLAND, et al., | ) **&** |
| | ) **ORDER** |
|     Defendants. | ) |

\*\*\* \*\*\* \*\*\* \*\*\*

Inmate Daniel Portee has filed a *pro se* complaint asserting civil rights claims against federal officials pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). [R. 1.] This matter is before the Court to conduct an initial screening of Portee's complaint pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A. *Davis v. Prison Health Servs.*, 679 F.3d 433, 437-38 (6th Cir. 2012).

**I**

In his complaint, Portee alleges that in June 2014, while confined at the Federal Correctional Institution in Pekin, Illinois, he suffered injuries to his head, elbow, and back when he fell while walking from a transport van. Doctor Lemons at that facility prescribed Tylenol 3 and ibuprofen for pain management as well as Gabapentin, an anti-seizure medication. Over the next six months, Lemons varied the dosages for those medications to address Portee's then-current state of health and his rectal bleeding. [R. 1 at 3-4, 5.]

In December 2014, Portee was transferred from FCI-Pekin to the United States Penitentiary – McCreary in Pine Knot, Kentucky. Portee's complaint sets forth extensive allegations that between December 2014 and February 2015 medical staff at USP-McCreary falsified his medical records, unjustifiably reduced the dosages of his pain medications, and

failed to provide medical care when requested.  Specifically, Portee alleges that Nurse Practitioner Christopher Davis falsified his records by stating that Dr. Lemon's pre-existing twenty-one (21) day prescription for Tylenol 3 was for only three days, and that shortly after his arrival Dr. Jude Onuoha discontinued the pain medications prescribed for the fall he had suffered six months before.  He further alleges that Health Services Administrator Rhonda Jones directed him to address concerns regarding his pain management at a chronic care appointment rather than through sick call.  Finally, Portee states that in January 2015 Nurse Practitioner Christopher Davis denied his request to use a wheelchair and instead directed him to use his walker to ambulate.  [R. 1 at 4-8.]

Portee indicates that Warden J. C. Holland denied a grievance regarding his health care in February 2015.  Portee further states that he raised all of the concerns and allegations set forth above regarding his medical care in administrative appeals to the Bureau of Prisons' Regional Office and Central Office, but those appeals were denied in March 2015 and August 2015, respectively.  [R. 1 at 8-9.]  In his complaint, Portee contends that the conduct described above by Davis, Onuoha, Jones, and Holland constituted deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution.  [R. 1 at 9-15.]

Next, Portee indicates that in January 2015 he received several responses from the BOP to inmate grievances and appeals he had filed at FCI-Pekin before his transfer.  Because his transfer had delayed his receipt of those responses, the time to appeal had already passed.  Portee therefore sought written verification of the delay in receipt from Unit Secretary L. Foster.  Portee alleges that Foster initially stamped each document with the date it was actually received at USP-McCreary.  When this proved insufficient to satisfy the grievance administrator that Portee's delayed appeals should be deemed timely filed, Foster provided Portee with a written letter of

verification with respect to a regional appeal (which was ultimately accepted as timely), but later refused to do so with respect to three appeals to the Central Office.

Portee also alleges that while Unit Manager H. Anderson initially sought to assist him with obtaining the required staff verification, in May 2015 he intentionally excluded Portee from an Open House – which was available only to inmates with last names starting with the letters A through M – to prevent him from complaining about Foster's actions. Portee states that Anderson also refused to author and sign a letter regarding the delayed receipt. Anderson later explained that Portee had previously been provided with multiple copies of a staff letter verifying Portee's delayed receipt of his grievance responses. [R. 1 at 16-20.] In August 2015, another BOP officer provided Portee with the staff verification letter he had sought from Foster. [R. 1 at 30.]

In June 2015, Portee filed a grievance regarding the actions of Foster and Anderson. This grievance was denied by the warden in June 2015. Portee appealed to the Regional Office in July 9, 2015, but the appeal was denied on July 31, 2015. Portee then appealed to the Central Office on August 24, 2015; the Central Office did not formally deny his appeal until September 14, 2016. In his complaint, Portee contends that Foster and Anderson's actions violated his due process rights under the Fifth Amendment to the Constitution of the United States. He further contends that his exclusion from the Open House constituted retaliation by Anderson in violation of his rights under the First Amendment. [R. 1 at 21-24.]

Third, Portee alleges that in August 2015 Unit Counselor N. Keith was unable to provide him with an "Inmate History Chart" because Keith did not understand what Portee was requesting. Portee also states that in April 2015 Foster issued a "fabricated and retaliatory" Incident Report against him for Insolence when he became belligerent and refused to leave her

3

office, for which he was found guilty. The Regional Office rejected Portee's appeal of his disciplinary conviction in July 2015, but gave him ten days to resubmit a proper appeal. Portee alleges that he did not receive the Regional Office's rejection notice until six days later, and Anderson and Keith refused to provide him with a letter so indicating because neither personally handed the rejection letter to him. Portee filed an explanation for the delay with the Regional Office without staff verification, but the Regional Office rejected that as well. Portee appealed to the Central Office, which likewise rejected his appeal in September 2015. In his complaint, Portee alleges that Foster retaliated against him by filing a false Incident Report in violation of his rights under the First Amendment, and that Anderson and Keith violated his due process rights under the Fifth Amendment by preventing him from appealing his disciplinary conviction. [R. 1 at 21, 24-31.]

II

Although not named in the caption of the complaint as a defendant [R. 1 at 1], Portee later identified Assistant Health Services Administrator T. Cimarossa as a defendant. [R. 1 at 2.] However, he makes no factual allegations against her in the body of the complaint nor does he assert any claim against her, and any claim against this defendant will thus be dismissed.

Portee also names Warden J. C. Holland as a defendant, but alleges only that he denied grievances he filed regarding his health care. [R. 1 at 9.] He also broadly contends that Holland failed to ensure that the "overall medical system in place at USP McCreary ... [met] the health needs of the population." [R. 1 at 11.] These allegations fail to state a claim under the Eighth Amendment. In order to recover against a given defendant in a *Bivens* action, the plaintiff "must allege that the defendant [was] personally involved in the alleged deprivation of federal rights." *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) (*citing Rizzo v. Goode*, 423 U.S.

362, 373-77 (1976)). The mere fact that the defendant possessed the authority to supervise those directly involved is not, without more, enough. Respondeat superior is not an available theory of liability. *Polk County v. Dodson*, 454 U.S. 312, 325-26 (1981).

Accordingly, when a warden merely responds to an inmate's grievance regarding the health care he is receiving, the warden's limited role in responding is not a sufficient basis to impose liability for constitutional torts. *Alder v. Corr. Medical Services*, 73 F. App'x 839, 841 (6th Cir. 2003) ("The denial of the grievance is not the same as the denial of a request to receive medical care."). Rather, "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004); *see also Brock v. Wright*, 315 F.3d 158 (2d Cir. 2003) (absent evidence that warden was medically trained or independently understood allegedly adverse consequences of regional medical director's decision not to refer prisoner for outside treatment, warden was not liable for deliberate indifference to prisoner's medical needs merely for adopting medical director's decision); *Estate of Young v. Martin*, 70 F. App'x 256, 260-61 (6th Cir. 2003).

Portee's first set of claims asserts deliberate indifference to his serious medical needs by P.A. Davis, Dr. Onuoha, and HSA Jones. However, these claims were not timely asserted. The Court may dismiss a claim upon initial screening if it is plainly barred by the applicable limitations period. *Cf. Jones v. Bock*, 549 U.S. 199, 215 (2007) ("If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim."); *Franklin v. Fisher*, 2017 WL 4404624, at *2 (6th Cir. 2017) ("The district court properly dismissed Franklin's complaint for failure to state a claim upon which relief may be granted because it is obvious from the face of her complaint that

5

almost all of her claims are barred by the applicable statute of limitations."); *Castillo v. Grogan*, 52 F. App'x 750, 751 (6th Cir. 2002) ("When a meritorious affirmative defense based upon the applicable statute of limitations is obvious from the face of the complaint, sua sponte dismissal of the complaint as frivolous is appropriate.").

Portee's claims accrued in December 2014 and January 2015 when he became aware of the injury which forms the basis for his claims – the discontinuation of his pain medications and the refusal to provide him with a wheelchair. *Estate of Abdullah ex rel. Carswell v. Arena*, 601 F. App'x 389, 393-94 (6th Cir. 2015) ("Once the plaintiff knows he has been hurt and who has inflicted the injury, the claim accrues.") (internal quotation marks omitted) (citing *United States v. Kubrick*, 444 U.S. 111, 122 (1979)). Section 1983 does not provide a statutory limitations period; instead, federal courts apply the most analogous statute of limitations from the state where the events occurred. *Wilson v. Garcia*, 471 U.S. 261, 268-71 (1985). The events about which Portee complains occurred in Kentucky; therefore, Kentucky's one-year statute of limitations for asserting personal injuries applies. Ky. Rev. Stat. § 413.140(1)(a); *Hornback v. Lexington-Fayette Urban Co. Gov't.*, 543 F. App'x 499, 501 (6th Cir. 2013); *Mitchell v. Chapman*, 343 F.3d 811, 825 (6th Cir. 2003).

Before he could file suit, however, Portee was required to exhaust his administrative remedies available under the BOP's Inmate Grievance Program. 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 205-07 (2007). When a claimant is required to exhaust such remedies before bringing suit, the limitations period is tolled while he or she does so, as long as such remedies are pursued diligently and in good faith. *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000). The limitations period was therefore tolled from February 2015 to August 2015, by which time the Central Office had issued a final denial of Portee's appeal. [R. 1 at 9.] Portee

6

was therefore required to file suit by some point in July or August 2016. Because Ware did not file suit until December 2016, his claims are time-barred and must be dismissed. *Dellis v. Corr. Corp. of Am.,* 257 F.3d 508, 511 (6th Cir. 2001).

In another portion of his complaint, Portee suggests that he filed another grievance regarding at least some portion of these claims. He filed his appeal to the Central Office in that grievance on May 20, 2015, and alleges that he never received any response to it. [R. 1 at 13-14.] But by regulation the Central Office is required to respond to an appeal within forty days, and its failure to respond within that time frame is deemed a constructive denial of the appeal. 28 C.F.R. § 542.18. Accordingly, equitable tolling of the limitations period ceased forty days later on June 30, 2015. *Jordan v. U.S. Dept. of Justice*, No. 7: 15-CV-138-KKC (E.D. Ky. 2015), *aff'd*, No. 17-5467 (6th Cir. Mar. 7, 2018) (holding that equitable tolling ceases once the time period for the agency to respond has expired under its regulations) (citing *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) ("It is well established that 'administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance.'")); *Burley v. Federal Bur. of Prisons*, No. 6: 15-04-DCR, 2015 WL 3973076, at *3 (E.D. Ky. June 30, 2015). The failure of the BOP to respond to this grievance therefore did not extend equitable tolling indefinitely, and Portee's claims are time barred.

Portee's second set of claims assert that Foster and Anderson violated his rights under the Due Process Clause of the Fifth Amendment. Portee contends that the conduct of Foster and Anderson from January to April 2015 interfered with his ability to exhaust his administrative remedies by their alleged refusal to provide adequate staff verification of his delayed receipt of the BOP's responses to his grievance appeals. [R. 1 at 16-20; 23-24.] However, it is well-established that inmates have no constitutional right to have a grievance process at all, and thus

7

they have no due process right to one that functions in a manner the inmate deems efficient and timely. *Argue v. Hoffmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) ("[T]here is no inherent constitutional right to an effective prison grievance procedure.") (citing *Hewitt v. Helms*, 459 U.S. 460, 467 (1983)); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (federal grievance regulations providing for administrative remedy procedure do not create liberty interest in access to that procedure); *McCalla v. United States*, No. 5: 15-CV-387-JMH, 2016 WL 1698295, at *6 (E.D. Ky. Apr. 27, 2016). These allegations therefore fail to state a claim under the Due Process Clause, and must be dismissed.

Portee also alleges that Anderson retaliated against him in violation of the First Amendment. [R. 1 at 18-19, 23, 24-25.] A viable claim of retaliation is shown where the plaintiff engaged in constitutionally-protected conduct, the defendant took adverse action against the plaintiff at least in part because of that conduct, and the responsive action was sufficiently adverse that it would deter a person of ordinary firmness from continuing to engage in the protected conduct. *Thaddeus-X v. Blatter*, 175 F. 3d 378, 394 (6th Cir. 1999).

Anderson's alleged action in excluding Portee – along with half the inmate population – from three particular meetings of the Open House is not, as a matter of law, sufficiently hostile, antagonistic, or severe so as to deter a person of ordinary firmness from continuing to engage in the protected conduct. "It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise." *Evenstad v. Herberg*, 994 F. Supp. 2d 995, 1001 (D. Minn. 2014) (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). The "ordinary firmness" test is intended "to weed out trivial matters from those deserving the time of the courts as real and substantial violations of the First Amendment." *Santiago v. Blair*, 707

8

F.3d 984, 992 (8th Cir. 2013). Concrete actions such as punishing an inmate with disciplinary infractions, segregation, loss of a prison job, or transfer to a less desirable prison can have a sufficient deterrent effect upon the inmate to satisfy the "ordinary firmness" test. *Hill v. Lappin*, 630 F. 3d 468, 473 (6th Cir. 2010); *King v. Zamiara*, 150 F. App'x 485, 494 (6th Cir. 2005); *Herron v. Harrison*, 203 F.3d 410, 416 (6th Cir. 2000). But minor harassment and even casual threats of a non-severe nature, while unprofessional, fall far short of crossing the threshold into actionable retaliation. See *Dunbar v. Barone*, 487 F. App'x 721, 723-24 (3d Cir. 2012) ("[V]erbal threats and few gestures of racial harassment Dunbar allegedly encountered are not sufficiently adverse to support a retaliation claim."); *Burgos v. Canino*, 358 F. App'x 302, 306 (3d Cir. 2009) (citing *Maclean v. Secor*, 876 F. Supp. 695, 699 (E.D. Pa. 1995)). Here, Portee had ample other means to voice his concerns and to seek relief. The Court notes parenthetically that while the "ordinary firmness" test is an objective rather than a subjective one, it is plain that Anderson's alleged conduct did not deter Portee in the slightest from engaging in constitutionally-protected conduct: he continued, long after the Open House was held without him, to demand new documentation establishing that his late-filed appeals should be deemed timely. [*See* R. 1 at 19-24.]

Portee's due process and retaliation claims against Foster and Anderson are also barred by the statute of limitations. Portee states that he filed grievances regarding their conduct in June 2015; that he filed his final appeal to the Central Office on August 24, 2015; and that the Central Office did not formally deny his appeal until September 14, 2016. [R. 1 at 20-22] As noted above, the one-year statute of limitations found in Ky. Rev. Stat. § 413.140(1)(a) applies to these claims, and the equitable tolling to permit an inmate to exhaust administrative remedies concluded forty days after Portee filed his Central Office appeal. 28 C.F.R. § 542.18; *Risher*,

9

639 F.3d at 240. That date arrived on October 4, 2015, and Portee's failure to file suit on or before October 4, 2016 renders these claims time barred.

Portee's third set of claims contends that in April 2015 Foster retaliated against him by charging him with Insolence – a disciplinary offense for which he was convicted and has failed to obtain its reversal – in violation of the First Amendment. It also includes his claim that in July 2015 Anderson and Keith violated his due process rights by refusing to provide him with a letter indicating that he received a grievance rejection late, resulting in the rejection of his appeal of his disciplinary conviction. [R. 1 at 25-26, 29-31]

The filing of an allegedly false disciplinary report against an inmate can certainly be sufficiently serious to implicate First Amendment rights. *Hill*, 630 F. 3d at 472-74. However, Portee's retaliation claim against Foster is barred by the statute of limitations. Even assuming that the BOP's rejection of his Central Office appeal was improper, Portee exhausted this claim no later than September 18, 2015. [R. 1 at 30.] His failure to file suit until December 2016, more than one year after that date, renders this claim time-barred, and it must be dismissed. *Dellis,* 257 F.3d at 511.

While Portee set forth at length his efforts to exhaust his administrative remedies with respect to his other claims, he does not state or suggest that he filed any separate inmate grievance to complain of the conduct of Anderson and Keith with respect to his appeal of the disciplinary sanction. [*See* R. 1 at 29-30.] Even assuming that he did so, and further that this claim is timely asserted, his allegations fail to state a due process claim against these two defendants for the same reason stated above: an inmate has no inherent constitutional right to an effective grievance procedure. *Cf. Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *3

(6th Cir. Nov. 9, 2017); *Walker v. Mich. Dept. of Corrections*, 128 F. App'x 441, 445 (6th Cir. 2005); *Carpenter v. Wilkinson*, 205 F. 3d 1339 (6th Cir. 2000).

For each of the foregoing reasons, Portee's complaint must be dismissed for failure to state a claim.

Accordingly, it is **ORDERED** as follows:

1. Portee's complaint [R. 1] is **DISMISSED** with prejudice;

2. The Court will enter a judgment contemporaneously with this order; and

3. This matter is **STRICKEN** from the docket.

This the ____ day of May, 2018.

Gregory F. Van Tatenhove
United States District Judge